# EXHIBIT A





| | |
|---|---|
| **Entity Name:** | **STERLING INFOSYSTEMS - OHIO, INC.** |
| **Jurisdiction:** | OH |
| **Date:** | 9/2/2016 |
| **Receipt Method:** | FedEx |
| **Case Number:** | CV16868471 |
| **Plaintiff:** | THOMAS MERCK |
| **Defendant:** | STERLING INFOSYSTEMS-OHIO, INC. |
| **Document Type:** | Summons, Complaint & Attachment(s)/Exhibit(s) |

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV16868471 | D1 FX | 30098395 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

| THOMAS MERCK | **PLAINTIFF** |
|---|---|
| **VS** | |
| STERLING INFOSYSTEMS-OHIO, INC. | **DEFENDANT** |

## SUMMONS

```
STERLING INFOSYSTEMS OHIO INC
C/O PARACORP INCORPORATED
4568 MAYFIELD ROAD #204
CLEVELAND OH 44121
```

**You have been named defendant in a complaint** (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

**Said answer is required to be served on:**



**You are hereby summoned and required to answer** the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

**Said answer is required to be served on Plaintiff's Attorney** (Address denoted by arrow at left.)

**Plaintiff's Attorney**

```
MATTHEW A DOOLEY
5455 DETROIT ROAD

SHEFFIELD LAKE, OH 44054-0000
```

**Your answer must also be filed with the court** within 3 days after service of said answer on plaintiff's attorney.

**If you fail to do so, judgment by default will be** rendered against you for the relief demanded in the complaint.

**Case has been assigned to Judge:**

```
DEENA R CALABRESE
```
**Do not contact judge. Judge's name is given for attorney's reference only.**



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE |
|---|
| Sep 1, 2016 |

By_____
Deputy



COMPLAINT FILED   08/31/2016



CMSN130



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed:**
**August 31, 2016 16:40**

By: MATTHEW A. DOOLEY 0081482

Confirmation Nbr. 844855

THOMAS MERCK

   vs.

STERLING INFOSYSTEMS-OHIO, INC.

CV 16 868471

**Judge:**

DEENA R. CALABRESE

**Pages Filed:** 50

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **THOMAS MERCK, individually and as representative for the Classes,**<br>2517 Glenview Way<br>Coshocton, OH 43812 <br><br>        Plaintiff,<br><br>   v.<br><br>**STERLING INFOSYSTEMS-OHIO, INC.**<br>c/o PARACORP INCORPORATED<br>4568 Mayfield Road #204<br>Cleveland, OH 44121<br><br>        Defendant. | CASE NO.:<br><br>JUDGE: |

## CLASS ACTION COMPLAINT

### (Jury Trial Demanded)

Thomas Merck ("Plaintiff"), on behalf of himself, the Class set forth below, and in the public interest, brings this Action Complaint against Sterling Infosystems-Ohio, Inc. ("Defendant").

### **PRELIMINARY STATEMENT**

1.  This is a case about holding Defendant accountable for its willful failure to follow federal laws governing the content of consumer reports. Despite having been sued in a previous class action for essentially the same conduct alleged herein, and despite settling that case for both monetary and injunctive relief, Defendant has persisted in breaking the law and its promises to consumers.

2.  Recognizing that the content of consumer reports can have a significant impact on people's lives, Congress has chosen to regulate the procurement, use, and content of those reports

1

through the Fair Credit Reporting Act ("FCRA").  15 U.S.C. § 1681, *et seq.*

3.      As further discussed herein, Defendant has willfully violated the FCRA by systematically reporting adverse information on consumers which antedates the report by more than seven years, despite 15 U.S.C. § 1681c(a) explicitly prohibiting the inclusion of such information.

4.      Specifically, Defendant reports certain consumer address information as a "high risk indicator" because Defendant claims that certain consumer addresses are associated with one or more of the following: hotels, motels, rooming houses, boarding houses, trailer parks, campsites or personal care facilities.  Defendant labels consumers as having this "high risk indicator" even when the address which is the cause of the indicator is one that Defendant's own reports indicate the consumer has not been "seen" at for more than seven years.

5.      Moreover, Defendant's report on Plaintiff includes multiple duplicative entries for the same address, making it appear as though Plaintiff has lived at twenty-three different locations, when in reality, the report only includes fourteen unique addresses, and of those only twelve are associated with places where plaintiff actually lived.  The dates Defendant includes which purport to be the dates Plaintiff was "first" and "last" seen at these various addresses contradict one another and are internally inconsistent, with different "first" and "last" dates appearing for the same address.

6.      By labeling job applicants as "high risk" based on unconfirmed information about the kinds of places they supposedly lived more than seven years ago (in Plaintiff's case, an address where he lived *twenty-five* years ago, *when he was still a child*), Defendant has taken away the protection the FCRA affords consumers against being judged based on old, and frequently inaccurate, information.

2

7.     Defendant's actions are all the more egregious because Defendant *knows* that including old, adverse, and inaccurate information in its reports violates the law.  Defendant was sued in a separate class action lawsuit in 2012 for reporting outdated adverse information, and the final settlement in that case resulted in Defendant paying over $4 million to resolve those claims against it. *Ernst v. DISH Network, LLC*, No. 12-cv-8794, ECF No. 237 (S.D.N.Y. Nov. 13, 2015).

8.     Defendant was again sued for including "high risk indicators" in its reports when those indicators were associated with address information which was more than seven years old in its reports on in 2015, yet it still failed to change its policies. *Gambles v. Sterling Infosystems, Inc.*, No. 1: 15-cv-09746 (S.D.N.Y. December 14, 2015).

9.     Rather than producing accurate reports which only contain lawfully reportable information, Defendant continues to prefer to produce cheap, inaccurate and outdated reports which create the false appearance of being comprehensive and insightful.

10.     Through this pattern and practice of related violations, Defendant has consistently undermined Congress's carefully struck balance, unlawfully placing its business interests above the rights of consumers.

11.     Based on Defendant's conduct, Plaintiff asserts FCRA claims on behalf of himself and three Classes of consumers.  On behalf of himself and the Classes, Plaintiff seeks statutory damages, punitive damages, attorneys' fees, expenses, costs, and all available other appropriate relief.

## THE PARTIES

12.     Individual and representative Plaintiff Thomas Merck is a resident of Coshocton, Ohio.

13.     Defendant Sterling Infosystems-Ohio, Inc. is a corporation doing business as

3

Sterling Talent Solutions throughout the United States, including in Independence, Ohio.

14.     According to its website, Defendant is a multinational provider of background check products, that maintains "20 offices in nine countries, our team of more than 3,500 employees [and] proudly serves over 50,000 customers around the world, including a quarter of the Fortune 100." *See* About Us, http://www.sterlingtalentsolutions.com/About/About-Us (site last visited August 31, 2016), (attached hereto as Exhibit 1).

15.     Defendant maintains its largest domestic office in Independence, Ohio.

16.     The vast majority of Defendant's domestic production of consumer reports is done through its Independence, Ohio office.

17.     Defendant's Independence, Ohio office has more personnel with knowledge of the operations complained of in this suit—gathering information, compiling and issuing background reports—than all other domestic Sterling offices combined.

18.     Defendant is a consumer reporting agency within the meaning of the FCRA because for monetary fees, it engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such reports.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20.     Ohio's common pleas courts are endowed with "original jurisdiction over all justiciable matters..." Article IV, Section 4(B), Ohio Constitution.

4

21.    Venue is proper in this Court pursuant to Ohio Civ. R. 3(B)(2) as Defendant resides in Cuyahoga County, maintains its principal place of business in Cuyahoga County, and conducted activity that gave rise to the claim for relief in Cuyahoga County. Further, Defendant has appointed an agent to receive service of process in Cuyahoga County.

## STATUTORY BACKGROUND

22.    The FCRA was enacted based on Congress's findings that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that there is a "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681. Thus, the FCRA requires consumer reporting agencies to operate "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Id.*

23.    To ensure that consumer reporting agencies report information in a manner which is "fair and equitable to the consumer," and "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information," the FCRA prohibits consumer reporting agencies from reporting old information. Specifically, agencies are forbidden from reporting the following:

(5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

15 U.S.C. § 1681c(a).

24.    The FCRA also requires that consumer reporting agencies maintain reasonable procedures to ensure "maximum possible accuracy" of the information included in the reports they produce. *See* 15 U.S.C. § 1681e(b).

25.    Defendant systematically and purposefully disregards its "grave responsibilities"

5

by routinely reporting outdated, adverse, and inaccurate "high risk" address information on consumers in violation of the FCRA.

## ALLEGATIONS RELATING TO NAMED PLAINTIFF MERCK

26.     In May of 2016, Plaintiff applied for work at Wal-Mart. The yearly salary for the position for which Plaintiff applied was under $75,000.

27.     On or around May 27, 2016 Defendant furnished a background report on Plaintiff to Plaintiff's prospective employer. A redacted copy of the report is attached hereto as Exhibit 2.

28.     Plaintiff's report and the reports of other class members were not procured in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any suspected violation of preexisting written policies of the employer.

29.     The report Defendant furnished to Plaintiff's prospective employer purported to contain information regarding various places Plaintiff had lived. This information was presented under the heading "Social Security Trace for County Searches."

30.     The "Social Security Trace for County Searches" section of Plaintiff's report included no fewer than twenty-three separate entries, each of which purported to identify an address where Plaintiff had lived.

31.     Each address entry contains a date which is identified as the "first seen" date and one which is identified as the "last seen" date. These dates are meant to correspond with the period during which the consumer lived at the address.

32.     Many of these addresses included on Plaintiff's report are duplicative of one another, and some of the time periods associated with different addresses overlap with one another.

6

33.     Despite the fact that Defendant's report contains 23 total address entries, it only contains 14 unique addresses.  Moreover, the "first" and "last" seen dates for a number of these addresses contradict one another, meaning that some of the entries are, by definition, inaccurate. (*See, e.g.*, Ex. 2 at 2-4, listing various identical addresses, with entries for the same address containing different "first" and "last" seen dates.)

34.     The earliest "first seen" address date included in Plaintiff's report is November 1992.  The latest "last seen" date is May 2016.

35.     The oldest address included in Plaintiff's report bears a warning statement about Plaintiff.  Specifically, this addresses states that it is a "high risk indicator."  The phrase "high risk indicator" is then followed by a description purporting to describe the nature of the property located at the "high risk" address.  On Plaintiff's report, the report indicates that the address was a "trailer park or campsite."

36.     In reality, the address which appears on plaintiff' report as a "high risk indicator" is an address for a campground where Plaintiff's step-father was a caretaker. Plaintiff lived at that address when he was fourteen years old, approximately twenty-five years prior to the date on which the report was issued.

37.     Accordingly, Defendant's report on Plaintiff unlawfully includes an item of information which is adverse to him, and which pertains to a period that antedates the report by more than seven years.  The inclusion of this information in Plaintiff's report violates the plain language of 15 U.S.C. § 1681c.

38.     Defendant's report is also inaccurate on its face, as there cannot be multiple dates on which Plaintiff was "first seen" or "last seen" at a given address.

39.     Defendant's report is also inaccurate with respect to the address history in a myriad

7

of additional ways. For example, two of the addresses on the report (642 Wilson Avenue and 524 S 7th Street) are addresses where plaintiff never lived. Each of these addresses appears twice.

40.    Defendant's inclusion of self-contradictory and duplicative address information in Plaintiff's report violates 15 U.S.C. § 1681e(b) in at least two ways.  First, the inclusion of duplicative information creates an inaccurate and adverse presentation of Plaintiff to prospective employers.  By showing that Plaintiff had lived at twenty-three separate addresses over a period spanning over twenty-five years, instead of only twelve separate addresses, Defendant portrayed Plaintiff as substantially less geographically stable than he actually is.  Second, the inclusion of inaccurate information regarding the dates when Plaintiff was "first" and "last" seen at given addresses violates § 1681e(b) because the information is patently inaccurate—there can only be one "first" and only one "last."

## DEFENDANT'S CONDUCT DID CONCRETE HARM TO PLAINTIFF

41.    The labeling of Plaintiff as "HIGH RISK" based on information more than seven years old did concrete harm to Plaintiff by making him appear less appealing to potential employers than he otherwise would have appeared.  Congress has made a policy determination that adverse information older than seven years, other than criminal convictions, should not be provided to potential employers by consumer reporting agencies.  15 U.S.C. § 1681c(a). Numerous states have recognized that the reporting of old adverse information harms job applicants and imposed similar bans.  *See, e.g.* N.Y. Gen. Bus. Law § 380-j; Tex. Bus. & Com. Code Ann. § 20.05; California Civil Code § 1786.18(a)(7); N.H. Rev. Stat. Ann. § 359-B:5.  By failing to provide Plaintiff with the "fresh start" mandated by Congress, Defendant did concrete harm to him.

8

42.     By reporting outdated adverse information which Congress has deemed unreportable, Defendant also invaded Plaintiff's privacy. This invasion of privacy was a concrete harm. In passing 15 U.S.C. § 1681c, Congress recognized a privacy right that is attached to old information, even information that exists in public records. The connection between forbidding the reporting of old information and consumers' privacy rights is well-established. *See King v. General Information Services Inc.*, 2:10-cv-06850, ECF No. 52 at 14 (E.D. Pa.) (Brief of the United States, arguing that "Section 1681c's restrictions on disclosing older adverse information serve the governmental interest in protecting individuals' privacy.")

43.     Falsely labeling Plaintiff as "HIGH RISK" did concrete harm to his job prospects. Defendant provided this information to Plaintiff's potential employer for the sole purpose of allowing Plaintiff's potential employer to evaluate him for employment. There is absolutely no proven correlation between living at a campground over twenty-five years ago and being "high risk." Reporting false and damaging information to one's potential employer is a concrete harm in and of itself and would have been actionable at common law as defamation *per se*.

44.     In addition to the inaccurate and derogatory labeling of Plaintiff as "HIGH RISK," the inaccurate and duplicative manner in which Plaintiff's address history was reported created concrete harm, because it made him look less appealing to his potential employer. By creating the mis-impression that Plaintiff is itinerant and geographically unstable, Defendant committed a concrete harm strongly analogous to common-law defamation.

45.     Defendant is one of the largest employment screening companies in the United States. There is a substantial risk to Merck that Defendant will report this false and derogatory information to another potential employer.

9

46.     Merck was distressed and suffered emotional harm due to the false and derogatory information contained in his report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

**A.     Defendant's Illegal Reporting of Outdated Adverse Information.**

47.     When a consumer reporting agency furnishes a consumer report, the agency is required to exclude adverse items of information which antedate the consumer report by more than seven years.  15 U.S.C. § 1681c(a)(5).

48.     Defendant's practice of including "high risk" warning indicators based on addresses where, according to Defendant, the consumer was "last seen" more than seven years ago violates a fundamental protection afforded to consumers under the FCRA, is contrary to the unambiguous language of the statute, and is counter to longstanding judicial and regulatory guidance.  *See, e.g.,* FTC, *Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations*, July 2011, at 55 ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection."); *Serrano v. Sterling Infosystems, Inc.*, 557 F. Supp. 2d 688 (C.D. Cal. 2008) (holding that the FCRA prohibits even *alluding* to existence of unreportable adverse information).

49.     Defendant's consumer reports are produced in an automated fashion from electronic databases.

50.     As part of the process of assembling consumer reports, these databases utilize a variety of algorithms to ensure that information reported "matches" the consumer who is the subject of the report.  Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System 22 (December 2012).

10

51.     In the same way that Defendant uses algorithms to ensure that personally identifying information in a report matches the subject of the report's information, it is standard practice for consumer reporting agencies to write algorithms "to filter out obsolete credit information."     (Credit Reporting,     http://www.consumeradvocates.org/for-consumers/credit-reporting) (last visited August 31, 2016) (attached hereto as Exhibit 3).

52.     As one of the largest consumer reporting agencies, and one which invests heavily in technology, Defendant is aware of the power of algorithms, and their usefulness in structuring consumer reports.

53.     Given its awareness and technical prowess, Defendant, consistent with standard industry practices, could have easily written an algorithm to ensure that all of its reports would exclude "high risk" warning labels associated with addresses where the "first seen" and "last seen" dates both predate the report by more than seven years.

54.     It is standard in the consumer reporting industry for consumer reporting agencies to have a purge date for information in their system that has become outdated. *See Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007). Yet, Defendant failed to implement a purge date in its systems.

55.     In addition to failing to implement automated procedures to avoid statutory violations, Defendant also failed to have the report properly reviewed by an individual who was trained in the FCRA, and specifically, in the requirements of 15 U.S.C. § 1681c. Had Defendant had a properly trained individual review this report, these problems would have been easily detected.

56.     By failing to utilize appropriate algorithms, purge dates, or manual review, Defendant's practices and procedures for excluding adverse information older than seven years

11

fell far below industry standards and constitute knowing and reckless disregard for Defendant's statutory obligations.

**B.      Defendant's Illegal Failure to Adopt Reasonable Procedures to Ensure Maximum Possible Accuracy.**

57.      Consumer reporting agencies are required to adopt reasonable procedures to ensure maximum possible accuracy of the information included in the reports they issue.  15 U.S.C. § 1681e(b).

58.      The obligations of 15 U.S.C. § 1681e(b) require both that the information presented in consumer reports is actually accurate, and also that the information is presented in such a way as to not be misleading.

59.      The address history information in Defendant's report is inaccurate in two ways. First, it is inaccurate on its face.  Second, it is presented in a misleading fashion.

60.      Defendant's reports are inaccurate on their face because they contain "first seen" and "last seen" dates for the same address, which are not the same as one another.  This internally inconsistent information is obviously not accurate, as the very meaning of "first" and "last" is that they are exclusive.  There can only be one "first" and only one "last."  Yet, Defendant's report provides multiple "first" and "last" dates for the same address.

61.      Defendant could have easily written an algorithm that would identify circumstances in which its reports were self-contradictory as to the "first" and "last" seen dates, so that Defendant could take appropriate steps to identify the correct dates.  However, Defendant failed to do so.

62.      Alternatively, or additionally, Defendant could have had properly trained human beings manually review its reports before they were issued to ensure that they did not include self-contradictory information.  Yet, Defendant failed to do so.

12

63.     Defendant's decision to include numerous entries regarding the same address also causes Defendant's reports to be inaccurate.

64.     Reports that contain factually correct information but nonetheless mislead their readers are neither maximally accurate nor fair to the consumers who are the subjects of such reports.  Reporting the same item of information multiple times is misleading.  *See Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426 (E.D. Pa. 2010).

65.     Consumer reporting agencies' obligation to ensure maximum possible accuracy includes an obligation to exclude multiple entries for the same item of information.  In the context of reporting criminal offenses, the *Smith* court noted that duplicative reporting "creates an adverse presentation."  *Id.* at 436.

66.     The Federal Trade Commission ("FTC") has sued at least one consumer reporting agency for reporting criminal incidents more than once in a report, and other consumer reporting agencies already make efforts to identify and delete duplicative entries.  *See, e.g., U.S. v. Hireright Solutions, Inc.*, No. 12-cv-1313, Stipulated Final Judgment, ECF No. 3 at 4 (D.D.C. Aug. 29, 2012) (stating that HireRight is enjoined from "failing to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in a single report").

67.     Defendant is a member of the National Association of Professional Background Screeners ("NAPBS").  NAPBS has informed its members of the FTC's case against HireRight and the dangers of duplicative reporting of criminal information.

68.     Defendant could have easily written an algorithm which would identify instances where the same address was being reported more than once in a given report.  Yet, Defendant failed to do so.  Similarly, Defendant could have implemented manual review of its reports to ensure each address was only reported once.  Yet, Defendant failed to do so.

13

69.     By failing to adopt any quality control procedures whatsoever to ensure that the dates in its reports were accurate, and by failing to eliminate duplicative entries, Defendant violated the FCRA's core statutory mandate of maximum possible accuracy.

70.     Defendant knew that its address history information was inaccurate and unreliable. Indeed, Defendant attempted to disclaim the contents of the "Social Security Trace" by including a disclaimer in its reports warning the user away from relying on the data. Specifically, Defendant includes the following:

> END-USER IS NOTIFIED THAT FOR LEGAL AND PRACTICAL REASONS INFORMATION OBTAINED THROUGH A SOCIAL SECURITY NUMBER TRACE SHOULD BE USED ONLY TO VERIFY THE INFORMATION PROVIDED BY THE CONSUMER ON HIS/HER EMPLOYMENT APPLICATION. INFORMATION OBTAINED THROUGH A SOCIAL SECURITY NUMBER TRACE SHOULD NOT BE USED ALONE OR IN CONJUNCTION WITH ANY OTHER INFORMATION TO MAKE AN EMPLOYMENT DECISION.

71.     Consumer reporting agencies cannot absolve themselves of the legal responsibility to maintain reasonable procedures to ensure maximum possible accuracy by including disclaimers in their reports purporting to warn users that the information included therein is unreliable.

72.     Defendant knew its customers would rely on the address information for employment purposes, and fully intended for them to do so. Defendant's customers certified to Defendant, consistent with 15 U.S.C. § 1681b(b)(1), that they were using the reports for employment purposes. Defendant intentionally provided "high risk" labels in the Social Security Trace section of its reports so that its customers would, and could, rely on that data in making employment decisions. If, as Defendant's disclaimer claims, the address information was to be used for address verification purposes only, then there would be no need for Defendant to identify certain addresses as "high risk."

14

73.    Moreover, Defendant's disclaimer explicitly advises its customers to use the unreliable "first" and "last" address information to "verify" other information provided to the customer by the consumer during the job application process.

74.    Defendant's disclaimer demonstrates that its violations were knowing, or at the very least, reckless.

## C.    Defendant's Legal Violations Harmed Consumers.

75.    Employers increasingly rely on reports compiled by consumer reporting agencies in making hiring decisions. *See* FTC, Data Brokers: A Call for Transparency and Accountability (2014), *available at* https://www.ftc.gov/system/files/documents/reports/ data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527

databrokerreport.pdf (discussing the dramatic expansion and availability of consumer data collection by consumer reporting companies and how the consumer reports they compile are increasingly detailed and voluminous, yet frequently prone to inaccuracy); Brief for Massachusetts, et al. as Amici Curiae Supporting Respondent, *Spokeo, Inc. v. Robins*, No. 13-1339, 2015 WL 5316995 (U.S. Sept. 8, 2015) ("While the commercial use of consumer data profiles is not new, emerging technologies and the digitization of data have dramatically expanded the volume and commercial availability of ever-more detailed data.").[1]

76.    Given this reliance on reports prepared by consumer reporting agencies, it follows that labelling a candidate as "high risk" is likely to be taken at face value and hurt that individual's job prospects. By presenting information about consumers in a way that made them appear to have

---

[1] *See also* Persis S. Yu and Sharon M. Dietrich, Broken Records: How Errors By Criminal Background Checking Companies Harm Workers and Businesses, Nat'l Consumer Law Center, 31 (Apr. 2012), http://www.nclc.org/images/pdf/pr-reports/broken-records-report.pdf ("Employers seldom read the disclaimers [aimed at circumventing FCRA obligations] and believe that the report they have bought is accurate and stands on its own.").

15

moved around more than they actually had, and by labeling them as high risk based on the addresses where they had lived, Defendant's conduct made consumers less attractive to prospective employers than they otherwise would have been.

77.     By purporting to offer "the world's most robust background screening technology" and "unrivaled accuracy," Defendant encouraged employers to rely on facially inaccurate dates in its reports concerning consumers' representations about where they had lived and when. *See* Exhibit 1 ("our process includes numerous check points and quality controls that are designed to deliver reliable information so that you can make informed hiring decisions").

**D.     Defendant's Legal Violations Are Knowing, Willful, and Driven By Self-Interest.**

78.     Defendant includes the section titled "Social Security Trace for County Searches" in its reports in order to identify all the places where the subject of the report may have lived, and to therefore identify jurisdictions where public records should be searched for information about the subject of the report.

79.     Defendant has a business interest in including as many addresses as possible so that it can encourage its clients to purchase criminal record searches from as many jurisdictions as possible.

80.     Defendant also includes this "Social Security Trace for County Searches" in its reports to make the reports appear voluminous, and to create the impression for its customers that the customers have purchased something of value.

**CLASS ACTION ALLEGATIONS**

81.     Plaintiff asserts his Claims for Relief against Defendant on behalf of himself and the Classes defined as follows:

**Outdated Adverse Information Class**

16

    i.  All individuals on whom Defendant prepared a background report from two years prior to the date on which this action was filed and continuing through the date the class list is prepared;

    ii.  Whose background report contains a social security trace which includes at least one address that antedates the report by more than seven years; and

    iii.  Where at least one of the addresses in (ii) includes a "high risk" indicator.

**Duplicative Information Class**

    i.  All individuals on whom Defendant prepared a background report from December 14, 2013 and continuing through the date the class list is prepared;

    ii.  Whose background report contains a social security trace which includes the same address repeated more than once.

**Inaccurate Address Information Sub-Class**

    i.  All individuals on whom Defendant prepared a background report from December 14, 2013 and continuing through the date the class list is prepared;

    ii.  Whose background report contains a social security trace which includes the same address repeated more than once; and

    iii.  Where the "first" or "last" seen dates for the duplicative entries for the same address are not identical to one another.

82.    Identifiability: The Classes can be identified based on Defendant's own records.

83.    Numerosity: The Classes are so numerous that joinder of all class members is impracticable. Defendant has produced thousands of reports covered by the claims in this case.

84.    Commonality. Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes, including but not limited to:

a)    Whether Defendant includes outdated, duplicative, and inaccurate address information in its reports;

b)    Whether Defendant's violations of the FCRA are willful;

c)    The proper measure of statutory damages and punitive damages; and

17

d)     The proper form of injunctive and declaratory relief.

85.     Typicality.   Plaintiff's claims are typical of the members of the Classes. Throughout the class period, Defendant typically produced reports including outdated, duplicative and inaccurate address information. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistent with other class members in accordance with its standard policies and practices.

86.     Adequacy.  Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

87.     This case is maintainable as a class action under Ohio Civ. R. 23(B)(1) because prosecution of actions by or against individual members of the Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

88.     Class certification is also appropriate under Ohio Civ. R. 23(B)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class

18

members' claims in a single forum.

89.     Plaintiff intends to send notice to all members of the Classes to the extent required by Ohio Civ. R. 23(C)(2).  The names and addresses of the class members are available from Defendant's records.

**CLAIM I**
**Reporting Outdated Adverse Information**
**15 U.S.C. § 1681c(a)**
*On behalf of the Outdated Information Class*

90.     Plaintiff realleges and incorporates the allegations set forth in Paragraphs 1-89.

91.     In return for money, Defendant furnished consumer reports on Plaintiff and other members of the Outdated Information Class to third parties.

92.     The consumer reports provided by Defendant included addresses antedating the reports by more than seven years and which resulted in consumers being labeled as "high risk."

93.     The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Outdated Information Class members under 15 U.S.C. § 1681c(a).  Defendant's willful conduct is reflected by, *inter alia*, the following:

a)      Defendant was founded in 1975, and the FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

b)      Defendant is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside employment counsel.    Yet, there is no contemporaneous evidence that Defendant determined that its conduct was lawful;

c)      Defendant was previously sued for similar conduct, paid monetary damages, and promised to no longer report old adverse information, yet persisted in doing so;

d)      Defendant could have easily established and used a computer-based algorithm to

19

filter the database from which it produces consumer reports to ensure that addresses with "first" and "last" seen dates older than seven years were excluded from reports, or that consumers were not labeled as "high risk" based on those addresses;

e)     Defendant's conduct is inconsistent with the plain language of the statute; and

f)     Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically reporting old "high risk" information based on addresses that antedated the report by more than seven years. By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

94.     Plaintiff and the Outdated Information Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

95.     Plaintiff and the Outdated Information Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

96.     Plaintiff and the Outdated Information Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

### CLAIM II
### Duplicative Reporting
### 15 U.S.C. § 1681e(b)
#### *On behalf of the Duplicative Information Class*

97.     Plaintiff realleges and incorporates the allegations set forth in Paragraphs 1-89.

98.     In return for money, Defendant furnished consumer reports on Plaintiff and other members of the Duplicative Information Class to third parties.

20

99.     The consumer reports provided by Defendant included multiple entries for the same addresses.

100.    This resulted in consumers appearing to have lived at more locations than they actually had, and made them appear less geographically stable than they actually were.

101.    The inclusion of misleading and duplicative information on consumer reports violates the plain text of the FCRA, as well as FTC guidance.

102.    The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Duplicative Information Class members under 15 U.S.C. § 1681c(a). Defendant's willful conduct is reflected by, *inter alia*, the following:

   a)     Defendant was founded in 1975, and the FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

   b)     Defendant is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside employment counsel.   Yet, there is no contemporaneous evidence that Defendant determined that its conduct was lawful;

   c)     Defendant could have easily established and used a computer-based algorithm to filter the database from which it produces consumer reports to ensure that each addresses was only listed once;

   d)     Defendant's conduct is inconsistent with the plain language of the statute;

   e)     Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically including multiple address entries to create the misimpression that its reports were comprehensive, and to encourage its customers

21

to purchase criminal records information from multiple jurisdictions;

f)   By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

g)   Defendant attempted to disclaim responsibility for the inaccurate presentation of information in its reports by telling its customers not to rely on the reports, even though the sole purpose for which it sold the reports was to allow its customers to evaluate prospective employees, and even though the section it told its customers not to rely on labeled consumers as "high risk."

103.   Plaintiff and the Duplicative Information Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

104.   Plaintiff and the Duplicative Information Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

105.   Plaintiff and the Duplicative Information Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

### CLAIM III
### Reporting Inaccurate Information
### 15 U.S.C. § 1681e(b)
#### *On behalf of the Inaccurate Address Information Class*

106.   Plaintiff realleges and incorporates the allegations set forth in Paragraphs 1-89.

107.   In return for money, Defendant furnished consumer reports on Plaintiff and other members of the Inaccurate Address Information Class to third parties.

22

108.    The consumer reports provided by Defendant included multiple entries for the same addresses. The reports also included "first" and "last" seen dates for those addresses which were internally inconsistent, and therefore, by definition inaccurate.

109.    The inclusion of plainly inaccurate information on consumer reports violates the plain text of the FCRA.

110.    The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Inaccurate Address Information Class members under 15 U.S.C. § 1681c(a). Defendant's willful conduct is reflected by, *inter alia*, the following:

   a)    Defendant was founded in 1975, and the FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

   b)    Defendant is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside employment counsel.   Yet, there is no contemporaneous evidence that Defendant determined that its conduct was lawful;

   c)    Defendant could have easily established and used a computer-based algorithm to filter the database from which it produces consumer reports to ensure that each address was only listed once and to ensure that its reports did not include internally inconsistent "first" and "last" seen dates;

   d)    Defendant's conduct is inconsistent with the plain language of the statute;

   e)    Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically including multiple address entries with inaccurate date information, to create the misimpression that its reports were

23

comprehensive, and to encourage its customers to purchase criminal records information from multiple jurisdictions over multiple time periods;

f)     By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

g)     Defendant attempted to disclaim responsibility for the inaccurate presentation of information in its reports by telling its customers not to rely on the reports, even though the sole purpose for which it sold the reports was to allow its customers to evaluate prospective employees, and even though the section it told its customers not to rely on labeled consumers as "high risk."

111.    Plaintiff and the Inaccurate Address Information Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

112.    Plaintiff and the Inaccurate Address Information Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

113.    Plaintiff and the Inaccurate Address Information Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

a)     Determining that this action may proceed as a class action under Ohio Civ. R. 23(B)(1) and (3);

b)     Designating Plaintiff as representative for the Classes and designating Plaintiff's Counsel as counsel for the Classes;

24

c)   Issuing proper notice to the Classes at Defendant's expense;

d)   Declaring that Defendant committed multiple, separate violations of the FCRA;

e)   Declaring that Defendant acted willfully, in deliberate or reckless disregard of Plaintiff's rights and Defendant's obligations under the FCRA;

f)   Awarding statutory and punitive damages as provided by the FCRA;

g)   Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h)   Granting further relief, in law or equity, as this Court may deem appropriate and just as provided by the FCRA.

## DEMAND FOR JURY TRIAL

114.   Plaintiff, pursuant to Ohio Civ. R. 38(B), demands a trial by jury.

Date: August 31, 2016

/s/ Matthew A. Dooley
Matthew A. Dooley  (0081482)
Stephen M. Bosak   (0092443)
O'TOOLE McLAUGHLIN DOOLEY
& PECORA, CO LPA
5455 Detroit Road
Sheffield Village, OH 44054
Telephone: 440-930-4001
Facsimile: 440-934-7205
Email: mdooley@omdplaw.com
        sbosak@omdplaw.com

ATTORNEYS FOR PLAINTIFFS AND
THE PUTATIVE CLASSES

25

# EXHIBIT 1

About Us | Sterling Talent Solutions

LOGIN     CANDIDATE HUB     SMALL BUSINESS     800-899-2272





Hiring Solutions     Industries     Plans & Pricing     Resources     About Us     Blog

Sterling Talent Solutions / About Us / About Us

# About Us

## Not Just Another Background Screening Company

We can't wait to tell you about who we are and what we do. We're truly passionate about our clients, our mission and what we stand for. Even though we're one of the world's largest screening companies --- we never want to be faceless and impersonal. Your business is always personal to us.

## We're your local screening company – but with global expertise

Since 1975, we 've been serving organizations like yours with high quality employment screening and hiring solutions so that you can be confident in your people decisions. We pride ourselves on our customer service, unbeatable speed and unrivaled accuracy. With 20 offices in nine countries, our team of more than 3,500 employees proudly serves over 50,000 customers around the world, including a quarter of the Fortune 100.

## We empower smarter people decisions fueled by innovation and dynamic technology

There are hundreds of background screening companies out there, so how do we make a difference for you? We start with the most advanced technology available anywhere in the industry. And we never stop improving it. We constantly refine and reinvent our technologies and processes so that we exceed your expectations where it matters most to you and your candidates:

- Speed


**Contact Us**
We're here to help.

**Subscribe To Our Best Practices Newsletter**


Enter email

Submit     Read our latest newsletter


**Discover Simpler Screening**

Learn the basics in our Background Screening 101 eBook

Read Now     eBook

- Accuracy
- Compliance
- Technology and Integrations
- Service

## We hate to make you wait

The faster we complete your background check, the faster you can get a candidate hired. Our pioneering CourtDirect™ technology provides instant access to criminal records located in county court jurisdictions. Where most screening companies still rely on slow, manual processes, CourtDirect uses high-speed connections into more than 2,200 jurisdictions across the U.S. This means that we can search over 75% of all criminal records in minutes – not hours or days. With access to millions of criminal records, CourtDirect delivers faster turnaround times on your screening requests and improves overall accuracy by decreasing the opportunity for human errors.

## We don't like mistakes – and neither do you

We know that speed is important but it's even more important to us to be accurate. And while we work really hard to get it right, we aren't perfect – there's no such thing as 100% accuracy. (Click here to learn more about how a criminal background check is completed in the U.S.). That's why our process includes numerous check points and quality controls that are designed to deliver reliable information so that you can make informed hiring decisions.

## We're always watching the compliance landscape - and you should too

Screening is complicated and the rules are constantly changing. Our team of compliance professionals employs a strict "monitor-update-inform" lifecycle to watch all legislative and regulatory bodies.

This means that we:

1. Monitor – We continuously monitor sources of legislation at every level of national and international government. For every state, province or locality, we apply an informational "filter" to our service and reports.

2. Update – As legislation changes, we do more than just update

our reports. We regularly modify our processes and technology, including our fulfillment process and software. This commitment to legal compliance is reflected in our accreditation by the National Association of Professional Background Screeners (NAPBS). This gold standard is awarded to a small percentage of background screening companies and is the result of our adherence to 56 different quality and compliance measures.

3. Inform – We regularly pass on our learning and best practices to you. Our account managers regularly call or email clients with news and information about updates. Our expert webinars and newsletters are prized for sharing industry benchmarks and best practices.

We are committed to compliance with the many relevant laws that impact background screening, including but not limited to applicable EEO law, the Fair and Accurate Credit Transactions (FACT) Act, Fair Credit Reporting Act (FCRA), Gramm-Leach-Bliley Act, Sarbanes-Oxley Act and USA Patriot Act, as well as the latest rules changes by the Department of Transportation (DOT), Federal Trade Commission (FTC), Consumer Financial Protection Bureau (CFPB) and Federal Aviation Administration (FAA).

### It's our business to know your business

In each of our offices, we have teams of highly trained service and account professionals who are passionate about delivering the best service every day. To create a local and personal experience, we create tightly knit service teams to focus on our clients in specific industries and geographies. It's their business to know both the nuances of your screening program as well as the common screening practices in your industry. Our service commitment includes senior account support for management and program owners, designated support for day-to-day inquiries, order support, ETAs and system troubleshooting, and dedicated IT project/program management assigned by time zone.

### We streamline your process

If you've invested in an applicant tracking system or HRIS system, you've already made the commitment to improve your hiring process. We can further streamline your workflow and improve overall time to hire by integrating background screening directly into your ATS or HRIS systems.

About Us | Sterling Talent Solutions

We integrate into most of the most popular ATS and HRIS systems including:

- Oracle Taleo Business Edition
- Ceridian
- iCIMS
- PeopleMatter
- Kwantek
- Jobvite
- TalentReef
- Newton
- Greenhouse
- Bullhorn
- Oracle Taleo Enterprise
- IBM Kenexa

- KRONOS
- Ultimate
- Infor
- Workday
- SAP SuccessFactors
- PeopleFluent
- Silk Road
- Cornerstone on Demand
- Taleo Enterprise Edition
- UltiPro
- Workforce

Visit our Partnerships and Alliance page to learn more about our valued partners.



**EMPLOYMENT BACKGROUND CHECKS**

Criminal Background Checks
Drug and Health Screening
Education & Employment Verification
Executive Investigations
Social Security Number Trace
Motor Vehicle Records Checks
Sanctions, Risk & Compliance

**ONBOARDING SOLUTIONS**

Employee Audits & Monitoring
Form I-9 & E-verify
Hiring Tax Credits

**RESOURCE CENTER**

Blog
Events & Webinars
Case Studies & Testimonials
Expert Articles and eBooks
Compliance Resources
In The News
FAQ's
Newsletter

**OTHER IMPORTANT LINKS**

Careers
FACT Act Disclosure
Privacy Policy
EU & Switzerland Privacy Policy

**SUBSCRIBE TO OUR NEWSLETTER**

Enter email

Submit

**CONNECT WITH US**

888-889-5248

About Us | Sterling Talent Solutions



# EXHIBIT 2

June 6, 2016

THOMAS MERCK
2517 GLENVIEW WAY
COSHOCTON OH 43812

RE: Control Number 89240610

Dear THOMAS MERCK,

Confirmation Number\Request ID: 25002921

Enclosed is a Consumer Report or Investigative Consumer Report (background report) that was requested by Wal-Mart Stores, Inc. in connection with your application for employment. Also enclosed is "A Summary of Your Rights Under the Fair Credit Reporting Act and any state fair credit reporting act".

This background report includes public record information that is likely to have an adverse effect on your ability to obtain employment with Wal-Mart.
We prepared the background report for Wal-Mart.

If you believe any of the information in the background report is inaccurate or incomplete, please immediately contact our Compliance Department at the toll-free telephone number listed below:
    Sterling Infosystems
    6111 Oak Tree Blvd
    Independence, OH  44131
    800-305-3299
    Fax: 888-768-2488

Sincerely,

Sterling Infosystems

Enclosures:    Copy of Investigation report
               Summary of Rights Under FCRA

Notice to California residents!
In accordance with California Civil Code §1786.29 (a), please be aware that the background report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records, and information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report.

In accordance with Section 613(a)(1) of the Fair Credit Reporting Act, Sterling Infosystems  hereby notifies you that the public record information contained in the enclosed Consumer Report or Investigative Consumer Report (background report) has been provided to:
               WAL-MART STORES, INC.
               1300 SE 8ᵗʰ Street
               Bentonville, AR 72716-0815
               Mail Stop: 815
This information was provided to the above party for employment purposes.  Please note that Sterling Infosystems provides the background report information only and applies Wal-Mart's rules or criteria to that report to make the decision regarding eligibility for employment based upon the background report.  Sterling Infosystems does not make the ultimate hiring decision.

Should you have any questions regarding the accuracy of the background report information provided, please contact Sterling Infosystems toll-free at 800-305-3299.

*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.*

### A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

• **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

• **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
• a person has taken adverse action against you because of information in your credit report;
• you are the victim of identify theft and place a fraud alert in your file;
• your file contains inaccurate information as a result of fraud;
• you are on public assistance;
• you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

• **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

• **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

• **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

• **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

• **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

• **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

• **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

• **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

• **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates. | a. Consumer Financial Protection Bureau 1700 G Street NW Washington, DC 20552 |
| b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | b. Federal Trade Commission: Consumer Response Center – FCRA Washington, DC 20580 (877) 382-4357 |
| 2. To the extent not included in item 1 above: | |
| a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks | a. Office of the Comptroller of the Currency Customer Assistance Group 1301 McKinney Street, Suite 3450 Houston, TX 77010-9050 |
| b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act | b. Federal Reserve Consumer Help Center P.O. Box 1200 Minneapolis, MN 55480 |
| c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations | c. FDIC Consumer Response Center 1100 Walnut Street, Box #11 Kansas City, MO 64106 |
| d. Federal Credit Unions | d. National Credit Union Administration Office of Consumer Protection (OCP) Division of Consumer Compliance and Outreach (DCCO) 1775 Duke Street Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings Aviation Consumer Protection Division Department of Transportation 1200 New Jersey Avenue, SE  Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board Department of Transportation 395 E Street S.W. Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access United States Small Business Administration 409 Third Street, SW, 8th Floor Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission 100 F St NE Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration 1501 Farm Credit Drive McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or Federal Trade Commission: Consumer Response Center – FCRA Washington, DC 20580 (877) 382-4357 |

05/27/2016


STERLING
Know Who You're Hiring!™

| Client Information | | | |
|---|---|---|---|
| WAL-MART | | Subcode: | E8123075 |
| 1300 SE 8TH STREET | | Reference #: | 01 |
| BENTONVILLE          AR    72716-0815 | | Quoteback: | ANY CLIENT USER DATA |
| | | Attention: | WAL-MART  GLOBAL ARC |
| Location:  01937 | | | |

| Applicant Information | | | |
|---|---|---|---|
| Applicant Name: | **MERCK, THOMAS A** | Control #: | 89240610 |
| Social Security No: | | Ordered By: | XML REQUESTS |
| Phone: | | | |
| Maiden Name/Aliases: | THOMAS, MERCK THOMAS, A MERCK | | |
| Address: | 2517 GLENVIEW WAY   COSHOCTON, OH 43812 | | |

### CAUTION

California Applicants/Employees Only: The report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records, and information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report. An investigative consumer reporting agency shall provide a consumer seeking to obtain a copy of a report or making a request to review a file, a written notice in simple, plain English and Spanish setting forth the terms and conditions of his or her right to receive all disclosures, as provided in Section 1786.26.

Sólo para los Solicitantes/Empleados de California: En el informe no se garantiza la exactitud o veracidad de la información en cuanto al tema de la investigación, sino sólo que se ha copiado exactamente de los registros públicos, y la información generada como resultado del robo de identidad, incluyendo las pruebas de una actividad delictiva, podría estar incorrectamente asociada con el consumidor que sea el sujeto del informe. Una agencia investigadora de informes de crédito deberá suministrarle a un consumidor que trate de obtener una copia de un informe o solicite revisar un archivo una notificación por escrito en inglés y español lisos y llanos, en la que se establezcan los términos y las condiciones de su derecho a recibir toda la información, como se dispone en la Sección 1786.26.

Pursuant to Minn. Stat. Ann. § 332.70(4): The report may include information that has been expunged, sealed, or has otherwise become inaccessible to the public since the date it was collected.

Results pertaining to the subject's potential criminal background results are only included in the report if there is an exact match between the full name and date of birth provided by the subject and the court record. To ensure the integrity of our results, the criminal information reported appears exactly as it is received from each search.

As sex offender, office of foreign asset control and federal criminal offender databases may only list names, information is provided only if there is a complete name match between the subject and the entry in the government records.

Department of motor vehicle records are provided only if there is an exact match between the license number provided by the subject and the agency record.

Credit reports are provided by the credit bureau based on 2 matching criteria among name, address and social security number.

*Page:   1 of 5*

Applicant Name: MERCK, THOMAS     SSN: ████████     Control Number: 89240610

To the extent criminal background results are duplicative of findings from non-criminal background checks, such as a sex offender hit, the results are duplicated in the report. Accordingly, a thorough review of the complete report is required to ensure that the company properly recognizes duplicative results.

The purpose of Social Security Trace/Address Locator Report is to locate jurisdictions for purposes of expanding the scope of the criminal background check. The Social Security number provided by the applicant is not checked against the Social Security Administration database since the Social Security Administration database generally is not accessible for pre-employment screening purposes. In determining whether a number appears to be validly issued, SSN protocols are applied but please note that due to the randomization of the issuance of social security numbers, any conclusion regarding whether the number is valid may not be accurate for recently issued numbers.

AS IT MAY NOT BE PERMISSIBLE OR RECOMMENDED TO USE CERTAIN INFORMATION CONTAINED IN THIS REPORT FOR EMPLOYMENT DECISIONS, IT IS ADVISABLE TO CONSULT WITH COUNSEL PRIOR TO MAKING ANY ADVERSE HIRING DECISIONS. BY REQUESTING AND ACCEPTING THIS REPORT, CLIENT CONFIRMS IT IS ACTING IN COMPLIANCE WITH ITS END USER CERTIFICATION.

## Report Summary

Applicant's Status: Complete
Services Ordered:

| | | | |
|---|---|---|---|
| Enhanced National Criminal | C | | Informational |
| Sex Offender Registry Check | C | | Clear |
| Social Security Trace For County | | | |
| Searches | C | MERCK, THOMAS | Informational |
| Score Report - County Record | C | MERCK, THOMAS | **Not Competitive** |
| Score Report - Trace | C | MERCK, THOMAS | Competitive |
| Global Terrorist Watchlist Search | C | | Clear |
| Federal All Districts Record Check | C | ALL DISTRICTS | Clear |
| County Criminal Record | C | COSHOCTON, OH | **Alert** |
| Alias Names Were Checked | | COSHOCTON, OH | |

| Product | Reference | Status | Result |
|---|---|---|---|
| **Enhanced National Criminal** | | Complete | Informational |

Please refer to the county criminal search

| Sex Offender Registry Check | | Complete | Clear |
|---|---|---|---|

Search Performed On 05/23/2016

There were no records found in the Registered Sex Offender database, including 50 states, Guam, Puerto Rico and the Northern Mariana Islands, matching the submitted search criteria based upon the information provided.

| Social Security Trace For County Searches | MERCK, THOMAS | Complete | Informational |
|---|---|---|---|

SSN TRACE FOR:                          REPORT DATE:
  MERCK, THOMAS A                         05/23/2016

TOTAL SUBJECTS RETURNED: 1

SUBJECT 1
  MERCK, THOMAS ALLEN                    LAST SEEN:  05/2016
  859 S LAWN AVE                         FIRST SEEN: 02/2010
  COSHOCTON, OH 43812

*Page: 2 of 5*

Applicant Name:   MERCK, THOMAS                SSN: ▓▓▓▓▓▓▓▓▓              Control Number: 89240610

THOMAS, MERCK                                    LAST SEEN:  01/2010
  859 S LAWN AVE                             FIRST SEEN: 01/2010
  COSHOCTON, OH 43812

MERCK, THOMAS ALLEN                              LAST SEEN:  04/2016
  PO BOX 383                                 FIRST SEEN: 11/1992
  WARSAW, OH 43844

MERCK, THOMAS ALLEN                              LAST SEEN:  02/2014
  369 S 3RD ST                               FIRST SEEN: 03/2012
  COSHOCTON, OH 43812

THOMAS, MERCK                                    LAST SEEN:  04/2012
  369 S 3RD ST                               FIRST SEEN: 03/2012
  COSHOCTON, OH 43812

MERCK, THOMAS ALLEN                              LAST SEEN:  07/2011
  529 S 6TH ST                               FIRST SEEN: 04/2006
  COSHOCTON, OH 43812

MERCK, THOMAS ALLEN                              LAST SEEN:  12/2007
  851 MAGNOLIA ST                            FIRST SEEN: 03/1999
  COSHOCTON, OH 43812

THOMAS, A MERCK                                  LAST SEEN:  11/2007
  529 S 6TH ST                               FIRST SEEN: 04/2006
  COSHOCTON, OH 43812

MERCK, THOMAS ALLEN                              LAST SEEN:  01/2007
  313 N 4TH ST                               FIRST SEEN: 09/2005
  COSHOCTON, OH 43812

THOMAS, A MERCK                                  LAST SEEN:  01/2007
  313 N 4TH ST                               FIRST SEEN: 09/2005
  COSHOCTON, OH 43812

MERCK, THOMAS A                                  LAST SEEN:  12/2005
  515 S 6TH ST                               FIRST SEEN: 03/2005
  COSHOCTON, OH 43812

MERCK, THOMAS ALLEN                              LAST SEEN:  01/2005
  641 WILSON AVE                             FIRST SEEN: 01/2005
  COSHOCTON, OH 43812

THOMAS, A MERCK                                  LAST SEEN:  01/2005
  641 WILSON AVE                             FIRST SEEN: 01/2005
  COSHOCTON, OH 43812

MERCK, THOMAS ALLEN                              LAST SEEN:  12/2003
  524 S 7TH ST                               FIRST SEEN: 12/2003
  COSHOCTON, OH 43812

THOMAS, A MERCK                                  LAST SEEN:  12/2003
  524 S 7TH ST                               FIRST SEEN: 12/2003
  COSHOCTON, OH 43812

MERCK, THOMAS A                                  LAST SEEN:  01/2003
  873 MAGNOLIA ST                            FIRST SEEN: 07/2000
  COSHOCTON, OH 43812

THOMAS, A MERCK                                  LAST SEEN:  07/2000
  873 MAGNOLIA ST                            FIRST SEEN: 07/2000
  COSHOCTON, OH 43812

*Page:  3 of 5*

Applicant Name:   MERCK, THOMAS        SSN: ▓▓▓▓▓▓        Control Number: 89240610

MERCK, THOMAS ALLEN                    LAST SEEN:  02/1999
    646 ORANGE ST                      FIRST SEEN: 02/1999
    COSHOCTON, OH 43812

    THOMAS, A MERCK                     LAST SEEN:  02/1999
    646 ORANGE ST                      FIRST SEEN: 02/1999
    COSHOCTON, OH 43812

    MERCK, THOMAS                       LAST SEEN:  08/1998
    646 ORA                            FIRST SEEN: 08/1998
    COSHOCTON, OH 43812

    THOMAS, A MERCK                     LAST SEEN:  01/1994
    PO BOX 383                         FIRST SEEN: 11/1992
    WARSAW, OH 43844

    MERCK, THOMAS
    2517 GLENVIEW WAY
    COSHOCTON, OH 43812

    MERCK, THOMAS
    42539 US HIGHWAY 36
    WARSAW, OH 43844
    ***HIGH RISK INDICATOR: TRAILER PARK OR CAMPSITE.


END-USER IS NOTIFIED THAT FOR LEGAL AND PRACTICAL REASONS INFORMATION
OBTAINED THROUGH A SOCIAL SECURITY NUMBER TRACE SHOULD BE USED ONLY TO
VERIFY THE INFORMATION PROVIDED BY THE CONSUMER ON HIS/HER EMPLOYMENT
APPLICATION. INFORMATION OBTAINED THROUGH A SOCIAL SECURITY NUMBER TRACE
SHOULD NOT BE USED ALONE OR IN CONJUNCTION WITH ANY OTHER INFORMATION TO
MAKE AN EMPLOYMENT DECISION.

| Score Report - County Record | MERCK, THOMAS | Complete | Alert |

Not Competitive

| Score Report - Trace | MERCK, THOMAS | Complete | Clear |

Trace Score Results:  Competitive

| Global Terrorist Watchlist Search | | Complete | Clear |

Search Performed On 05/23/2016


No Match was found in the Global Terrorist Watchlist

| Federal All Districts Record Check | ALL DISTRICTS | Complete | Clear |

Federal Criminal All Districts Record Check*** CLEAR ***

Jurisdiction:    ALL DISTRICTS

Records Were Checked For a Minimum of Seven Years

All federal jurisdiction courts were checked and no Federal records were found
based upon the information provided.

| County Criminal Record | COSHOCTON, OH | Complete | Alert |

*** ALIAS NAMES HAVE BEEN SEARCHED ***

Page:  4 of 5

Applicant Name:   MERCK, THOMAS          SSN: ▓▓▓▓▓          Control Number: 89240610

================================================================

CASE INFORMATION

Case Number                 0100514
Court Jurisdiction          COUNTY
Jurisdiction                COSHOCTON, OH
Country                     US
Status                      CLOSED CASE
State                       OH
County                      COSHOCTON


Charge Number               1

Final Charge                THEFT
Final Charge Type           MISDEMEANOR
Disposition Type            GUILTY
Sentence                    FINE, $400 FINE, Suspended fine=150
                            COSTS, $73 FINE
                            JAIL, 30 DAYS, Suspended duration=30 Days
                            COMMUNITY SERVICE
                            PROBATION, 2 YEARS, 02/08/2002 PROBATION TERMINATED
Outcome                     CONVICTION
Disposition Date            08/16/2001


IDENTIFICATION FOUND

Name Found                  THOMAS A MERCK
DOB                         MATCHES
Comments                    FILE DATE 08/16/2001
                            VIOLATION DATE 08/15/2001, Address : 2517glenview Way,
                            Coshocton, 43812, OH

*Page:  5 of 5*

• **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

• **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

• **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates. | a. Consumer Financial Protection Bureau 1700 G Street NW Washington, DC 20552 |
| b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | b. Federal Trade Commission: Consumer Response Center – FCRA Washington, DC 20580 (877) 382-4357 |
| 2. To the extent not included in item 1 above: | |
| a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks | a. Office of the Comptroller of the Currency Customer Assistance Group 1301 McKinney Street, Suite 3450 Houston, TX 77010-9050 |
| b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act | b. Federal Reserve Consumer Help Center P.O. Box 1200 Minneapolis, MN 55480 |
| c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations | c. FDIC Consumer Response Center 1100 Walnut Street, Box #11 Kansas City, MO 64106 |
| d. Federal Credit Unions | d. National Credit Union Administration Office of Consumer Protection (OCP) Division of Consumer Compliance and Outreach (DCCO) 1775 Duke Street Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings Aviation Consumer Protection Division Department of Transportation 1200 New Jersey Avenue, SE  Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board Department of Transportation 395 E Street S.W. Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access United States Small Business Administration 409 Third Street, SW, 8th Floor Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission 100 F St NE Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations Farm Credit Administration 1501 Farm Credit Drive McLean, VA 22102-5090 | Farm Credit Administration 1501 Farm Credit Drive McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or Federal Trade Commission: Consumer Response Center – FCRA Washington, DC 20580 (877) 382-4357 |

*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.*

### A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to  www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

• **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

• **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
• a person has taken adverse action against you because of information in your credit report;
• you are the victim of identify theft and place a fraud alert in your file;
• your file contains inaccurate information as a result of fraud;
• you are on public assistance;
• you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

• **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

• **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

• **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

• **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

• **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

• **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.



## Notice of Adverse Action

June 14, 2016

THOMAS MERCK
2517 GLENVIEW WAY
COSHOCTON OH 43812

RE: Control Number 89240610

Dear THOMAS MERCK,

Walmart is writing to notify you that we have made the decision that you are not eligible for employment at this time. This decision was based, in whole or in part, on information contained in a consumer report (criminal background check). You authorized Walmart to request a background check report upon acceptance of your conditional offer and completion of the FCRA Authorization and Disclosure Form. The report was furnished to Walmart by the consumer reporting agency whose contact information is located below.

SterlingBackcheck
Dispute Resolution Department
1 State Street
New York, NY 10004
Phone: 800-305-3299

You have the right to obtain a free copy of your consumer report from SterlingBackcheck if you request the report within 60 days. You also have the right to dispute directly with SterlingBackcheck the accuracy or completeness of any information provided by it.

Please note that SterlingBackcheck only provides the background report to Walmart. Walmart makes the decision regarding eligibility for employment based upon the report and while you are not eligible at this time, you may re-apply for a position at a future date.

Enclosed is A Summary of Your Rights Under the Fair Credit Reporting Act, which was also enclosed with our letter to you dated June 6, 2016.

Please note that SterlingBackcheck did not make the decision regarding the final score of your background check and they are not able to provide you the reasons why the decision was made.

Sincerely,

**Wal-Mart Stores, Inc.**
Attention: Associate Vetting
1300 SE 8th Street
Bentonville, AR 72716-0880
Phone: 800-348-1931
Email: backgroundchecks@wal-mart.com

Enclosed: A Summary of Your Rights Under the Fair Credit Reporting Act
Applicable State Notices

# EXHIBIT 3

Credit Report Problems – Identity Theft, Fair Credit Reporting|consumeradvocates.org





National Association of
Consumer Advocates

 ADVOCACY     RESOURCES     MEDIA    JOIN NACA     MEMBER PORTAL

 FOR CONSUMERS

# Credit Reporting



Need legal help?

Search our attorney directory to
find a lawyer near you.

## Common Problems

- Do you have a charge on your credit report that you did not make
  and Experian, Equifax, or Trans Union (Credit Reporting
  Agencies) is refusing to delete it?
- Were you denied credit or a loan because of charges on your credit
  report that do not belong to you?
- Have you declared bankruptcy and still see debt on your credit
  report that was supposed to be eliminated?

## SHARE YOUR STORY

 Make a difference.
Help us drive national
and local debates as
well as discussions
with policymakers.
Share your story now.

ARBITRATION

AUTO ISSUES

BANKRUPTCY

CREDIT REPORTING

DEBT COLLECTION

IDENTITY THEFT

MILITARY CONSUMERS

MORTGAGE, REAL ESTATE &
HOUSING

PAYDAY, TITLE & LENDING

ROBOCALLS &
TELEMARKETING

STUDENT LOANS

## Know Your Rights

You have the right to get one free credit report from each of the credit reporting agencies every year.

The Fair Credit Reporting Act (FCRA) is the primary law that addresses credit reports. It has three primary purposes:

1. Ensure that credit reports provide accurate information
2. Safeguard consumers' credit and personal identifying information
3. Give consumers the information that is being reported on them (Disclosure)

Some of the consumer rights in the FCRA include the following:

*Information to be Disclosed to You*

Upon your request, a Credit Reporting Agency (CRA) shall clearly and accurately disclose the following:

- all information in your file at that time
- the sources of the information
- identification of each person who procured a consumer report for employment purposes within the previous two years and for any other purpose within the previous year
- a record of all inquiries received within the previous year that identified you in connection with a transaction that was not initiated by you

*Reinvestigation*

- CRAs must conduct a reasonable reinvestigation after receiving a dispute.
- CRAs must delete or modify information that is found to be inaccurate or incomplete, or cannot be verified.
- CRAs must complete reinvestigation within thirty days or forty-five days if it is for a free annual report.
- CRAs must send consumer written results of reinvestigation.

*Identity Theft*

- CRAs must block information you identify as resulting from identity theft when they receive the following:
  - appropriate proof of identity
  - copy of an identity theft report
  - identification of such information by the consumer
  - a statement by the consumer that the information is not related to any transaction by the consumer
- The information must be blocked within four business days after receipt.

*Exclusions from Consumer Reports*

No consumer report should include the following:

- any adverse information, collection, or charge off that is more than seven years old
- paid tax liens that are more than seven years old
- bankruptcy cases more than ten years from the date of relief or adjudication

civil suits, judgments, or records of arrest that were released more
than seven years before the report or until the statute of limitations
expires, whichever is longer

## Correcting Your Credit

### BACKGROUND

Main Reporting Agencies: There are three main, national consumer credit
reporting agencies (CRAs): Experian Information Solutions, Inc.; Equifax
Information Services, LLC; and Trans Union LLC (the "Big Three").

How CRAs get Information: Experian, Equifax, and Trans Union all
collect information from court records, banks, credit card companies,
finance companies, department stores, cellular phone companies, court
records, and many other companies issuing credit. The "Big Three" do not
necessarily have the same credit information because not all creditors send
reports to all three agencies and the agencies do not all collect information
from the same public records.

When a business inquiries into or "pulls" your credit report, a search
program or algorithm pulls information from the CRAs' vast databases
based on your "personal identifiers", such as your name, address, date of
birth, and social security number. The search algorithm is supposed to
filter out obsolete credit information and credit information that doesn't
belong to you. The remaining information is combined into one report.
Your credit report isn't something fixed since the information used to
create your credit report is constantly changing as creditors constantly
provide new information about you.

### STEP 1: GET A CREDIT REPORT

Get a copy of your Report: Consumers may obtain a free copy of their
consumer report online ☞ at annualcreditreport.com once every twelve
months from Equifax, Experian, and Trans Union.

You are also entitled to a free report within sixty days of credit denial. The
agency on which denial is based will be mentioned in the notice.

### STEP 2: LOCATE THE CAUSES OF CREDIT MISTAKES

Errors in Credit Reports Occur Often. Fraud, data entry mistakes, and
improper merging of information by the CRA are all examples of common
errors. The errors can be caused by the creditor, the CRA, a thief, a
collection agency, or public record.

> Creditor error: The creditor or "furnisher" of information to the CRA
> provides the information in a database format that allows the CRA to
> bring the information right into its database without entering
> everything again. The individual pieces of data are known as
> "fields." Some creditors use different database formats, leading to
> problems in providing correct consumer information, especially
> regarding bankruptcy.

> Incorrect names: An incorrect name or social security number input
> by the creditor can go to the wrong consumer's file (e.g., incomplete
> consumer's name such as "J.M. Jones" could either be "John Michael
> Jones" or "Jay Milhous Jones" or any other combination, "Sam"
> could be "Samuel," "Samson," or a female "Samantha.") This

frequently happens with common names or where there is a junior/senior relationship.

Collection agency error: You can sue collection agencies that improperly report the information. Some companies intentionally (and illegally) place collection accounts on credit reports to get the victim to pay. Improperly reported information can also appear because creditors and credits agencies sometimes don't provide enough identification details when inputting new information into a file.

CRA error: Most credit reporting agencies use name, address, social security number, and date of birth to identify who you are. The CRA can cause an error by incorrectly merging information where identifying information is similar. This happens most frequently where there is a junior/senior relationship. It also can happen when social security digits are similar within two slightly. If the adult child with the same name as the parent moves home, big problems can result. There can also be problems where a recently married spouse has the same first name as a stepchild or the ex-spouse.

Public records error: The "Big Three" pay companies to go through court files and official records to obtain information. If the reporting agency does not have the company check often enough, the fact that a judgment or bankruptcy was later vacated or satisfied may not get reported.

## STEP 3: ALWAYS DOCUMENT

Documents are important. Many credit card companies, banks, and even credit reporting agencies provide toll free numbers and websites you can use to dispute credit errors. It's better to document your credit error dispute on paper. If you use the phone, then you need to follow-up in writing. Acknowledge the conversation (e.g. "this letter is a follow-up to my conversation by phone with your representative named Joe Smith in which we discussed . . ."). Send everything in writing by certified mail return receipt requested. There are many reasons to write the dispute in addition to, or instead of, over the phone.

Show concern. Just the fact that you bothered to collect your thoughts and write formally shows that you truly are concerned with the credit errors on your report. If you need the help of an attorney or regulatory agency later, they are more likely to take note of the seriousness with which you regard the matter.

Accurately track case. There may be many people involved in your dispute before it is resolved. First, many of the employees of credit institutions turn over regularly and you may be sent to a different person for each investigation. Also, you may need to show your paperwork to attorneys, law enforcement (in fraud cases), regulatory agencies, and perhaps to a court. Having documents helps others "get up to speed." Many credit companies use software to have a chronology of their contacts with you but it is recorded in a very self-serving manner to make the company look reasonable at your expense.

Trigger a legal effect. The obligations of some credit companies under some laws are not triggered unless you provide a written dispute.

## STEP 4: SEND DISPUTE LETTERS

Send disputes to CRAs. Send dispute letters directly to the CRA. You must put the credit reporting agencies on notice.

Send credit disputes by certified mail return receipt requested. Many attorneys who deal with credit reporting issues think it is imperative you send the disputes by certified mail return receipt requested instead of by phone and over the internet. With certified mail, you can track the letter all the way to the credit reporting agency and document its receipt.

Where to send credit disputes: It is not absolutely necessary to send disputes to the company furnishing incorrect credit information to the CRA, but it is the only way you can be certain that the furnisher of the disputed information is fully aware of your complaint. The CRAs do not send your dispute documents to the furnisher of information—they typically just summarize the dispute into a code. Your affidavit, police report, or copies of other relevant documents will not be sent on. Send it by certified mail return receipt requested.

Styles of credit disputes: With disputes, you want to provide the information necessary to have your dispute investigated and convey what is happening to you as a result of the false credit reporting.

Basics of contesting credit errors: Please include the following minimum information.

1. Your name, social security number, address, and date of birth
2. Name of the company reporting the inaccurate entry
3. Credit account number
4. A statement that the account was in error
5. Why you believe the credit report is in error
6. What you want done (e.g., you want the entire account deleted or corrected)
7. A request for how the CRA investigated the claim, including the name and phone number of anyone contacted in connection with the reinvestigation
8. Any documents to your dispute.

Further, you may want to attach a copy of your credit report from that company or a copy of your driver's license or utility bill that shows your current address if you moved recently. You might also add requests for verification if you are dealing with a collection agency, a statement of billing error if you are dealing with a credit card company; and a demand to send corrected information directly to a company that pulled your report if you were denied credit based on an error in a report.

## Contacting an Attorney

Search our Find An Attorney directory to find a NACA attorney who handles credit issues in your area.

## Additional Information

- Fair Credit Reporting Act
- Consumer Financial Protection Bureau Credit Reporting
- Federal Trade Commission on Disputing Errors on Credit Reports

Credit Report Problems – Identity Theft, Fair Credit Reporting|consumeradvocates.org

## Consumer Representation

The National Association of Consumer Advocates is a nationwide organization of more than 1,500 attorneys who represent and have represented hundreds of thousands of consumers victimized by fraudulent, abusive and predatory business practices.

Advocates    Resources    Media    Join NACA    Member Portal    For Consumers

About NACA    Blog    Contact Us    Sitemap    Login

## Stay connected

National Association of Consumer Advocates
1215 17th Street NW, 5th Floor, Washington,
DC 20036
Phone: 202.452.1989 | Fax: 202.452.0099
Email: info@consumeradvocates.org

Copyright © 2016, NACA. All rights reserved.
Privacy policy
Site design by Sleight-of-Hand Studios



ORIGIN ID:BKLA    (216) 443-7950
CCOC
1200 ONTARIO
CLEVELAND, OH 44113
UNITED STATES US

SHIP DATE: 01SEP16
ACTWGT: 1.00LB
CAD: 105501658/WSXI2900

BILL SENDER

TO   STERLING INFOSYSTEMS OHIO INC

C/O PARACORP INCORPORATED
4568 MAYFIELD ROAD #204
CLEVELAND OH 44121
(216) 443-7950        REF: CV16688471
INV: 30088355
PO:              DEPT:

WED - 07 SEP 4:30P
EXPRESS SAVER

TRK#   7839 7728 5223              DSR
0201                               44121

64 LNNA           OH-US   CLE



◄ Insert shipping
  document here.